Thank you, Your Honors, and may it please the Court, I'm David Salmons and I represent Defendant Appellant T.A., and if possible I'd like to reserve two minutes of my time for rebuttal. Please remember that our clocks don't take that into account, so. Yes, Your Honor. It is important to remember in this case what is now settled. First, it is settled that T.A. is a child with a disability entitled to special education services under the IDEA. It is settled, secondly, that the school district improperly denied him access to all public special education services by wrongly concluding that he did not have a covered disability. And third, and we think most importantly here, it is settled and conceded that Mount Bachelor Academy was an appropriate educational placement that in fact provided T.A. with special education services tailored to his needs. The appropriateness of the Mount Bachelor placement was not even challenged in the district's federal complaint. And it is undisputed that the school was licensed by the state to provide special education and related services and that it was not licensed and in fact did not even offer drug treatment services or counseling. Yet the district court held that the parents should be completely denied any reimbursement for the cost of that appropriate educational placement, supposedly for equitable reasons. Counsel, it seems to me that the issue, at least speaking only for myself, what it boils down to is to what extent is apportionment either permitted or required depending on parents' mixed motivations, that is, to treat his disability but also to treat things that were other than his disability. That's one issue. And the notice issue, whether the time before the notice should be treated differently than the time after the notice. So if you could help me sort out what a district court is required to do with regard to those two issues. Yes, Your Honor, I'd be happy to. Taking first the question of the subjective motivations of the parents, I think it is important again to remember that that doesn't go to the appropriateness of the placement in this case, because in this case it's conceded that this was an appropriate educational placement. In all of the prior cases, including the two Ashland cases, appropriateness was in dispute. And the court looked to But what did we did in the previous iteration of this case say that the parents' motives were a factor for the district court to look at? That's correct, Your Honor. And I think that it is possible that in the context of deciding between full reimbursement and partial reimbursement, a relevant factor could be the parents' subjective motivations for certain aspects of the program that may not be related. I think you could reach the same result objectively, and I would actually suggest to the court that much more important than any subjective motivation on the part of the parents is a sort of objective analysis of what alternatives were available and the costs and whether they were reasonable, that this is primarily, it really should primarily be an objective undertaking. But even looking at subjective motivation, I think it could go to the difference between full and partial reimbursement. And allow me a brief hypothetical to illustrate my point. Imagine that there were only two private schools in the area that would provide TA with the type of special education services he needed and that he was denied by the public school district. And we'll call those two private schools Mount Batchelor Academy Residential School and the Mount Batchelor Academy Day School. Both provided the same educational services and benefits, and the only difference between the two is one was residential and the other was not. Under those circumstances, assuming the good faith of the parents and all of the other parents here, I would submit that if the parents placed the child in the Mount Batchelor Day School, there would be no basis to deny anything, to award anything other than full reimbursement. If the parents, looking at their child's needs, conclude that based on a host of factors, perhaps a concern about isolating him from bad influences in his life or what have you, that the residential school is the appropriate placement, that decision we submit as a matter of law and of equity and logic, cannot lead to the result that the parents are denied all reimbursement. It could only go to the issue of whether partial reimbursement would be appropriate, and there you would look to the cost of the Mount Batchelor Academy Day School in this hypothetical. Now, we have submitted evidence. In fact, the only evidence in the record is that there were no other alternative private placements that would take Let me just stop you for a second. What you've just said sounds to me like a very effective argument to the district court on how the equities balance out, or should balance out in your view. But the district court balanced them. So what is your best case that the district court earned as a matter of law in denying all reimbursement, rather than going to some kind of apportionment? Sure. Was there any kind of factual credit offered to the district court on what partial reimbursement would look like? Taking the first question, what were the legal problems with the district court's decision? We think one of the most important is that the district court did not meaningfully undertake an analysis of the availability of partial reimbursement. That's required as a My question is a little bit more discreet. What is your best case for saying it had to? Yes, and that's what I'm getting at, Your Honor. I would cite two authorities to the court. The first is the Supreme Court's decision in Carter. The second is the Fourth Circuit's decision in M.S. v. Fairfax County. Both of those decisions we submit clearly hold that district courts are required to consider partial reimbursement if any portion of the educational benefits received by the child satisfied the requirements of the act and provided appropriate educational services. The Fourth Circuit's decision in particular, and in M.S. v. Fairfax County we think, is very close to this case. And the reasoning requires at least an award of partial reimbursement in this case, and would respectfully submit that any contrary decision by this court might in fact create a circuit conflict with that. So we can go upstairs again? Not that we're looking forward to that. We would like to have this case over, Your Honor. But that, and that we submit again, stands to reason, starting from first principles, with the fact that you have a child that was denied access to all public special education benefits, you have a district that was applying what the hearing officer concluded was an egregiously incorrect reading of the statute, and that no amount of additional notice and no amount of additional information from the parents would have altered in any way the district court's conclusions. We know that for a fact, Your Honors, because in 2003, in that mid-2003 evaluation, after the district had all of the information it falsed the parents for not providing sooner, after it had full notice of the placement at Mount Batchelor Academy, the district reached the exact same result, which shows that any error or deficiency of either notice or information on the part of the parents was harmless and did not adversely affect the district's conduct. And the same certainly cannot be true for the district's errors. The district's errors imposed substantial harm on T.A. and his parents. So any balancing of the equities would require that any deficiency of notice, which goes to your earlier question, Your Honor, is not a justification for reducing or denying reimbursement in this case. And in addition, I would cite the court to its decision in Ash v. Lake Oswego, which this court noted in its prior decision in this case, and Ash itself relies heavily on the Fourth Circuit's decision in Hall for the proposition that where a district has engaged in an egregious misinterpretation of the act, that that excuses any obligation for notice. And I think, again, here we know that it would have made no difference to the district. Could I ask a non-legal question here, and that is whether, now that this case has established some basic legal principles already, we're really just talking about money at this point, and no placement, because the child has graduated. Have the parties thought about whether a mediation unit could be helpful in resolving this financial dispute, or is everybody at loggerheads on that? I do believe that there have been attempts at that, and they have not gone anywhere. I would not care to characterize where the problem was with that. It might be appropriate in the future. I think, let me just, if I can, in answering, and I see my time is up, and without attempting to unnecessarily cast aspersions at the other side, and I certainly don't want to do that, I do think that one of the things you see in the briefs in this court and in the district court that we find a little troubling is the emphasis on the availability of attorney's fees and the need to have a result here that doesn't expose the district to attorney's fees, as that's a justification for denying what would otherwise be equitably. I don't want to take that position. I mean, nobody has to mediate. It was really an informational question. But I would just submit that that may be part of the explanation for why we are where we are. I think I can represent on behalf of the parents that we would be happy to have those conversations. The final point I would make, unless your honors have questions, and I'll wait for rebuttal if I can still have some time on rebuttal, is that one of the errors that we submit permeates the district court's decision, is a misunderstanding of who bears the burden of proof and who bears the cost of gaps in the record. Related to, for example, alternative placements and costs and the like. And it's important to remember that we're in federal court based on the complaint of the district challenging the award of equitable reimbursement by the hearing officer. So the district bears the burden of coming forward and showing why this otherwise appropriate educational placement, again, which is conceded, is unreasonably expensive, is unreasonable in light of alternatives, and when the district court opened up the record on remand in this case for precisely those kinds of evidence, the parents provided substantial evidence showing all of the various alternatives that they looked into, and it reflects we submit a fair amount of due diligence on their part, in a conclusion that there were no other available alternatives. Sotomayor, I know you've read, you've read, I think it's the last paragraph of my dissent before, which basically says the district court is willing on remand to take all these things into consideration, including why it was placed, when notice was given, all this stuff. Why, in a nutshell, in your view, is, I'm sure you can get what it is that is correct, but why do you today, and why does the record as it now exists, think that's not correct? Yes. If I may, Your Honor, I would make two points about that. The first is that I think Your Honor's dissenting opinion, if I can generally suggest this, and from the oral argument last time, was premised in part on an understanding that what happened in 2001, where there was a faulty assessment, was completely unconnected to what happened in 2003, and that the IEP was not at issue, and that the parents had somehow failed to challenge that original assessment in 2001. And I can understand how that impression may have come upon Your Honor, but it is incorrect. The 2001 assessment, under the statute and under this Court's cases at the time, the parents had two years in which to challenge that assessment as being an error under the IDEA. Well, they did not, Your Honor. They didn't contest it at the time. And they assumed, in fact, they agree at this point that the learning disability, under a learning disability, not that he doesn't have another health impairment, and they were never notified of that. But in any event, under the act, they had two years to challenge it, no matter what they might have said originally. They have the right to change their mind based on additional information, and this was a timely challenge to that placement. And so I think that under the circumstances, the parents here, and I'll just sum up with this, we have repeated errors by the district, and a hearing officer's specific finding, that because the district's officials concluded that only very, excuse me, only tremendously significant disabilities that result in very severe significant educational impacts. Those are quotes from the district's expert. This was the standard they were applying. It has no basis in the statute whatsoever. And the hearing officer found that as a result of that faulty standard, nothing more the parents could have done would have changed the equation. And we think when you're looking at equity, that tips the scale strongly in favor of full reimbursement, but at a minimum, partial reimbursement. Okay. Let's hear from Mark. Thank you, Your Honor. I'm going to turn this into a 15-minute argument. Thank you, Your Honor. And indeed, it's an argument that will last as long as I guess we have unanswered questions. Thank you. And I do want to make sure I answer your questions. I'm Nancy Hungerford. I'm representing the Forest Grove School District. I do want to jump to the issue of partial reimbursement, but before that, just simply to remind you that when the Ninth Circuit spoke in its original decision on this case, you very clearly set out the various considerations that the district court was to use. Yes, but I have a problem with what the district court has done on remand. And, of course, I'm speaking only for myself. But both at page 6 and at page 7 of the district court's opinion, what seems to be a finding of fact is made, which in my view is clearly erroneous. On page 6, he says, T.A.'s parents enrolled him at Mount Batchelor Academy, and he uses this MBA, for reasons other than his ADHD and depression. End quote. Then on page 7, he says, The decisive factor in this case is that T.A.'s parents appear to have enrolled T.A. in MBA not because of any disability recognized by the IDEA, but because of his drug abuse and behavioral problems. End quote. Now, in my view, that's clearly erroneous. If you look at the lengthy application form that the parents gave to Mount Batchelor, in which they have listed every possible way they can in answer to these questions, that they're enrolling him because of recognized disabilities, including depression, study habits, testing shows, verbal processing, ADHD, math disability, low working memory, et cetera, et cetera, and what is the diagnosis, ADHD, verbal processing, I don't know where the district court came up with that finding, but why isn't it clearly erroneous? First of all, the hearings officer herself, at the very beginning of her opinion, and I cite the excerpt of Record 176, said, The fact that it was T.A.'s escalating drug abuse, depression, and out-of-control behavior that caused his parents to remove him temporarily, they anticipated, from the high school. Well, that may have been wrong also, but what we're dealing with now is the district court's opinion. That's what we're reviewing. Right. Let me cite some facts to you, and bear in mind that your scope of review here is for clear air, and you're suggesting maybe it's clear air. Yes. I think if you look at the timing, which the district court relied upon very heavily, you find that as of March 12th of 2003, the FREER program, the wilderness program, which was not an educational program in any way, it was a drug abuse program, called the parents, had a conversation, and told them that he's going to go back to the same pattern of interacting with these bad influences, and he's going to go right back into drug use if you bring him home. The parents asked for ---- Let me just stop you there. There's no question that the triggering events may or may not have been disability-related, but the actual placement that I don't see anywhere where the district court takes into account what the parents actually wrote in writing as part of the application form to Mount Batchelor, where they said over and over that they wanted them to deal with his disabilities. I think that the district court enjoys discretion to consider a variety of factors, and they did. It wasn't just based upon what was written. And what was written did, in that one paragraph, reflect specifically the behavior and the drug problems. But the chain of events were that after they heard from the FREER program that he was going to revert back, FREER gave them some websites to look at, and they spent part of one day looking at those websites. They discounted some in Wyoming and Montana. Mount Batchelor Academy was in Oregon. And on the 13th, they had determined it was going to be Mount Batchelor, so much so that when they walked into the hearing with Dr. Fulop on the 14th, not the hearing, their meeting with Dr. Fulop on the 14th, they had already decided, and he admits that in his cross-examination, and it is admitted by the parents as well, that they had already decided based upon what they heard from FREER. So was their motivation. What evidence is there in the record before the district court of any alternative placement that existed at the time that would adequately have dealt with the identified disabilities that were listed in the application to which I referred? Okay. Let me say one other thing, and that is that Dr. Fulop was the first person to have ever identified him as ADHD. Their own counselor, Dr. Patchen, had seen him for three years and had never identified him as ADHD. The parents made this decision to place him at Mount Batchelor before they knew he was being identified as ADHD. I don't see how that is even relevant because in March, this application in writing in March of 2003 lists ADHD as the issue, the diagnosis. And that was made out, that application was on March 24th, 2003. That's right. So they had the audience with Dr. Fulop. Okay. That begs the question that I asked, which is, as of March 24th, 2003, what does the record show about what alternative placements or programs were available to this student to deal with his now-diagnosed ADHD, depression, and other diagnosed disabilities? There are a number of programs that the district witnesses in their affidavits indicated that the district sometimes purchased from other districts where those kinds of programs could be provided. The parents concluded, for instance, that the Edison School would not be available to him, but they never went to the district to ask for assistance because the district did place students in those kinds of programs. The district thought they were doing what the parents wanted and the child needed. So if there's evidence of lower-cost programs that would have done, then why isn't the answer to give the parents the equivalent of what those lower-cost programs would have done, rather than to completely refuse any placement at all? Because now I think you are invading the sphere that you have said you allow the district court to decide, which is to decide the weight of these equitable factors. Only if they're correctly found in the first instance, right? Well, there's no question about notice. There was a lack of prompt notice, and I would ---- Which goes to the junior year, but not to the senior year, because the notice happened after the junior year and before the senior year, right? The Ninth Circuit has said in the EH case in its recent EH decision ---- That's a factual question. Did the notice happen before the senior year? It did. However, the Ninth Circuit in the EH case has said that tardy notice does not cure the original lack of notice, because by that time the student is already at a residential placement. The chances of the parents being willing to pull that child back home are not good. And the evidence here is that T.A. was still suffering from the same behavior problems, the same issues that he had at the time that the parents placed him there. I have two final questions, and then I'll be quiet and let you talk and my colleagues talk. No, I want to answer your questions particularly. The first one is whether if, and I know that you don't agree with this, but if the district court's factual finding was clearly erroneous, that he says was the decisive factor, then don't we have to remand? Well, again, I do disagree that ---- No, I want you to answer it as a hypothetical. Yes, you would have to remand, because the district court is the body that is entitled to balance those factors. And he has, the district court judge has cited a number of factors. He did definitely cite the lack of notice, and he found that the lack of notice was not cured and did not affect this period after August 26th. He specifically makes a reference. And I think you would have to remand for the purpose of having the district court reweight those factors. But, again, I disagree. I know you do. And I'm not trying to get you to concede something that I know you don't concede. My final question to you is, again, the practical one, whether there would be any point in having these parties attempt mediation, or should we just go ahead and decide the case? I think that mediation was attempted. I would also remind you that the ---- In our program? Yes. Also, I would remind you that the district did pay under the stay put doctrine for a portion of the time that T.A. was at Mount Baxter. So, in effect, there's already been a substantial payment from district funds for his program there. This decision, as I'm recalling, came out in January of his senior year. And because stay put then, excuse me, the hearings officer's decision came out in January of his senior year, and because stay put then went into place, then the district was obligated to pay, and they did pay for the remainder of that year. So, in terms of any kind of partial obligation, I would submit to you that the district has more than satisfied, based upon, again, the district court's balancing of these factors, that has already been satisfied. Counsel, first of all, let me apologize for being late. And secondly, I'll listen to the tape of the oral argument before I make up my mind. But let me ask you, you mentioned that there was a partial payment by the school district of the Mount Baxter. How was that calculated or reckoned? It was a partial payment based upon the $5,200 per month, and that's a full payment of all the costs at Mount Baxter for that month. So when the decision was reached and the hearings officer's decision was reached, stay put went into effect. So the remaining months of his high school career had to be calculated, but the district paid the full amount of $5,200 a month for the remainder of that year. It wasn't a partial payment of the $5,200 every one of the months, but from a certain date forward, $5,200 was paid. That is correct, yes. And I guess I would urge the Court to consider, again, where this precedent would lead you in terms of trying to mandate a consideration of partial payment. Let me ask you a couple of questions on that. What in the district's view is the correct legal rule applicable to the not total denial or partial reimbursement? The correct rule in our view is that that is committed at the sound discretion of the district court judge. Well, at some level, a judge, district judge, commits an abuse of discretion if he doesn't get the law right. In fact, the argument that underlies all of Judge Graber's questions, I think, is that you can't totally deny reimbursement, at least without considering whether partial reimbursement would be equitable. I think that in the wording of the district court decision, he does consider both the period before and after August 26. Yes, but he doesn't, look, he doesn't ever consider whether partial reimbursement is an appropriate, equitable remedy. And that might be legal error. If it were, the Ninth Circuit would have corrected that in E.H. And I'm going to point out to you that those cases are very factually similar in this respect. Both cases, a hearings officer found that there was not a FAPE provided. Okay? Even though T.A. was never identified, but E.H. was identified, hearings officer finds that a FAPE was not provided, and the district court did not overturn that. So that's number one, similar. Number two, both in T.A., the hearings officer found that the Mount Batchelor was at least partially to be reimbursed, that it was an appropriate placement. In E.H., the hearings officer found that there was an appropriate placement. District court did not disturb that. I'm sorry. Go ahead. Is there any kind of factual predicate in the record for making an abortion? There is not. Not in terms of? What does the record show the actual $5,000, whatever, dollars that it costs? $5,200 a month. For Mount Batchelor? There's no separation out of educational expenses versus the expenses for? Is there any let's say between Mount Batchelor and a program that the school district could have? I would submit that it would be very difficult to make any kind of comparison in that regard, and Mount Batchelor is now closed. There is nothing in the record. There's no testimony. So it doesn't make any difference whether it's open or closed. There's nothing in the testimony. Is there any way that you could tell what a Forest Grove placement, and I now forget the names of the schools, but I remember reading that there were a couple of school district programs that were non-residential but would have accomplished the other objectives. Yes. Do you know how much they would cost? We really don't because those are an integrated part of an entire school. Do you bear the burden of proving what a partial reimbursement is as contrasted with a total reimbursement? I would say that T.A. would bear that burden. They were the initial. That was not an issue ever presented to the hearings officer in the first place by T.A. because they were going for the whole thing. So they never presented any evidence. They had testimony from the Mount Batchelor director. There was no evidence on the record regarding how the Mount Batchelor would have split this out. And so I do believe it would be their burden. But, again, I am concerned at the courts going down the road with precedents here. I'm trying to give you a chance to say why you wouldn't go down that road legally. Okay. I mean, the road is being traveled. First, there's no precedent anywhere in any Ninth Circuit court cases that it must be. That doesn't keep us from making the precedent. Secondly, I would say that given the most recent Ninth Circuit decision in the E.H. case where the court did not, the district court did not make any determination of partial payment. No, it didn't. But that's what I would like to ask you about because in E.H. the district court found, but it was not clearly erroneous, that the placement was not educational in nature. It was medical and not educational. And that, it seemed to me, was one of the strong underlying grounds for that opinion. And that's why I asked you if the district court's finding here is clearly erroneous and the placement was educational in nature, I'm not sure what E.H. has to say about it. But I do note that the statute gives the district court discretion to either reduce or deny reimbursement, either reduce or deny. First of all, as to E.H., E.H., the judge, the federal court judge, district court judge, was operating in the same arena as the federal district court here. That is, was looking at the equitable factors. Because district hadn't provided a FAPE, hearings officer found there was an appropriate placement for at least part of the time and the court did not overturn that. So the judge was looking at the equitable factors. So when he decided that there was not an educational purpose to that placement, he's deciding the same thing that the federal district court and T.A. is deciding when he's deciding that the reasons for the Mount Baxter placement were not primarily educational. So that really is the linchpin of everything in this case. Yes, it is. But there are other considerations as well. I do believe that we have briefed other reasons cited by the judge as to why he concluded that the parents, not just based upon one sentence that was written in an application, but based upon the timing of events, that the parents' motivation for placing him in Mount Baxter was because he was coming home from the career program, he was going to go right back to his drug cronies, and they had only a couple of days to do something to get him into a program where he would be secure from that, where he'd be in a residential program. I believe that their motivation and the reasons for that placement are the same as in E.H., and the court there did not require the federal judge, did not find it error for the federal judge to have failed to consider partial placement. May I ask a question? I know I'm taking up past your time. No. Do we get any help from the language of the statute here? I have in mind some federal statutes which talk about causation here, causation of the placement at Mount Baxter. Some statutes talk about whether the cause is in whole or in part because of a condition or because of an event, or whether it is but for the event. Does the statute give us any help there, or does it just say where appropriate? I think the statute leaves that to the discretion of the judiciary. Certainly the but for argument I think here would be satisfied that but for, and actually the hearings officer decides that as well, but for this drug issue and the concern of the parents about this boy's placement and the fact that they were concerned about their safety at home with him, they would not have placed him. If the statute was subject to a in whole or in part reading, then in part it might be because of the educational disabilities. Would you agree with that? Yes, but there is other prior Ninth Circuit decisions, and I think that the Clovis case actually stands for that, and I think we cited others in our brief, where the court warns that since you're dealing with school-age students, to try to segregate out the intertwining of the educational and the medical, for instance, and that was specifically rejected by the Ninth Circuit as instead, you know, they basically said that the test here is whether the placement was for educational purposes as opposed to other reasons. So there are prior decisions that have set this framework up. But finally, I want to point out that the district court followed your lead. When the district court met with us and got additional information on remand and set forth the framework for making this decision, and it all goes back to your decision and the wording in your decision where you said that it would be an appropriate consideration for the court to consider whether this placement was made for reasons other than the educational reasons, that is, the drug abuse and behavioral. That's what the district court functioned with and very faithfully, I think, followed your direction. And given that is so, the discretion and the broad discretion awarded to the federal district court along the lines that the Ninth Circuit did in the EH case should be maintained. Okay. Thank you. Thank you, Ms. Hunter. Thank you, Your Honors. I will be very brief. Let me just begin with what I hope is an obvious legal point, and that is that the district who initiated the federal court proceedings challenging the equitable award of reimbursement by the hearing officer, there's no doubt that they bore the burden of proof throughout the proceedings in the district court. The assertion that the parents bear that burden is simply wrong as a matter of law. Schaefer v. Wiest in the Supreme Court's decision makes that very clear. The Ninth Circuit's cases make that very clear. Secondly, there were no alternatives to the parents, and I would direct the court to the evidence that was submitted on remand by the parents, and there are several in here that state that, you know, they were not taking children that were either in or near their senior year, or they had a wait list and were not taking children. As to cost, the only evidence in the record as to alternative costs is the statement, the affidavit by the director of the Gately Academy that's at ER 217 that the parents put in. The Gately Academy is a non-residential licensed special education program in the same area that provides the same types of services but on a non-residential basis, and its cost is $5,400 a month. Is there any basis? I think we skipped over my question. Is there any factual basis in the record for making any kind of apportionment? Let's take it down to Ashler as between educational-related services and behavioral. Let me attempt it in two ways, and the first is to make what I hope is an obvious point that it's our position that full reimbursement is required here and there is no evidentiary basis on which to draw such a distinction. But if the court were nonetheless going to look for one, despite my best efforts at advocacy, I would point the court to the following fact, and that is the district court itself drew a distinction between the junior year placement and the senior year placement based on notice. It said that the parents did not provide notice before they put the child in Mount Batchelor initially. But then they come back to the school district in the spring of 2003, and they don't just ask for reimbursement to keep the child in Mount Batchelor in perpetuity. They ask for an assessment and a public placement. They ask for public services so they can put the child back in public school. There is no evidence in the record, and there is no finding by anyone, that the parents were not sincere in that request. They had had their child in public school from kindergarten to their junior year of high school. They were looking to return him to the public school system. The district had full notice, had all the information they could possibly want. Their assertion that there were alternative public placements that they could have offered to the parents, they had a perfect opportunity in the spring of 2003 to make those available. I don't think you answered Judge Reimer's question. I don't think it's a question of allocating based on notice, but allocating based on need or services. Yes, Your Honor. The point I'm trying to make is that if you, if Judge Reimer, for example, and I know this was a concern to her in her prior decision, was worried about the notice failures, you could potentially draw a distinction between the junior year and the senior year, because there were no notice deficiencies for the senior year placement. The district court itself made that finding. That's why it focused on the subjective intent, which we think is wrong for other reasons. But it drew that distinction. And all of these alternatives that the district now says were available, none of them provided special education services, Your Honors. Is there any evidence in the record as to how much of what Mount Bachelor Academy did focused on things other than the disabilities, the educational disabilities? I think I'm understanding that to be Judge Reimer's question, and I'm still not hearing an answer. I apologize. I thought Judge Reimer was sort of asking for any basis to draw a line, and I was assuming that there is one. But I'm happy to address that one. There's not a breakdown of the different types of services, but what we do know is that Mount Bachelor Academy was licensed to provide special education and related services. It was not licensed as a medical facility or to provide drug treatment or drug therapy. And we have an affidavit by the director of Mount Bachelor Academy. And this is at ER2 page 18 that said what they provide, what they were licensed to provide, and she said that if they thought that drug concerns were the primary concern with TA, they would not have taken him because they don't provide those services. They provide educational and related services. We submit that there is not a basis to carve out part of Mount Bachelor's expenses. I'm going to ask the same question in a totally different way. Did anybody, either side, Forest Grove or TA, in the district court, say anything like this? What judge definitely should give us 100 percent reimbursement? But in the off chance you don't agree, then you should consider partial reimbursement based on X. If you don't agree with the same thing in Forest Grove, you shouldn't give them a dime. But if you don't agree with that, then you shouldn't give them an entire reimbursement. Rather, you should do something in between. And here's how you could do that. How did I do that? We made those arguments the same way we made them to this Court. We did not put in detailed numbers or try to calculate what it would be. So how are we faulting the district court for doing something it couldn't do based upon what was given to it? Well, with respect, I disagree with that. And again, the Fourth Circuit's decision in M.S. v. Fairfax County, the Supreme Court's decision in Carter, puts the duty on the district court to consider partial reimbursement. If the district court had a notice concern ---- I guess my point is, as a district judge, you can't consider something that's just out there. I mean, it has to be in front of you, and then you can say ---- Well, that's right. But I think that this is where the burden of proof matters. The duty to going forward, the duty to fill in the record gaps belongs to the party seeking relief. That was the school district here. With all respect, T.A. does not have an obligation to provide a detailed calculation for partial reimbursement. It argued for why you shouldn't draw any of those distinctions. But if it did, it did argue that there should at least be partial reimbursement, in particular for the senior year where there was no notice deficiency, there were no informational deficiencies, and the school district had a second opportunity to provide alternatives and provided none. Okay. Thank you, Your Honors. Counsel, again, we appreciate your time. We will call off normal schedule. Thank you, Your Honor. And the matter, as argued, will be submitted. All rise.
judges: Rymer, Graber, Bea